[No. 20792. Department One. March 28, 1929.]

FRANK LEE, *Appellant*, v. W. B. SEVERYNS *et al.*,
*Respondents*, THE STATE OF WASHINGTON,
*Intervener and Cross-appellant.*[1]

*G. F. Vanderveer,* for appellant.

*Ewing D. Colvin* and *R. M. Burgunder,* for intervener and cross-appellant.

TOLMAN, J.—Appellant, as plaintiff, brought this action by serving and filing a simple complaint for money had and received in the amount of $13,500. The defendants answered with denials and an affirmative defense. The state intervened. The case was tried to the court, sitting without a jury, resulting in a judgment denying any relief to the plaintiff or to the intervener, and both have appealed.

The case was submitted to the trial court upon certain stipulated facts as follows:

"Mr. Vanderveer: It is admitted by the defendants, I understand, that we have demanded the return of the money and they refused to give it back and it is in the registry of the court? Mr. Burgunder:

[1] Reported in 276 Pac. 94.

Yes. Mr. Dumett: Yes. Mr. Vanderveer: It is stipulated that on the 31st day of December, 1925, Mr. Colvin, the prosecuting attorney of King county, accompanied by certain constables, entered a certain room in the city of Seattle and there arrested, while engaged in conducting gambling, the nine men whose names appear on the three receipts which have been admitted in evidence as plaintiff's exhibit "A"; that thereafter they took them in custody to the police station in this city, where, at the request of Mr. Colvin and the constables, the chief of police placed them in custody in the city jail; that thereafter the chief of police, at the request of the prosecuting attorney, fixed bail for the appearance of each of said persons to answer to a state charge of being common gamblers in the sum of fifteen hundred dollars; that thereafter the plaintiff Frank Lee deposited in cash with the chief of police, the defendant here, the sum of $13,500 as bail for said persons; that at the time there was no charge of any kind filed against any of said persons, but thereafter the prosecuting attorney filed in this court an information charging each of them with the crime of conducting gambling; that search has been made for them and none of them have been found and their whereabouts are unknown; that before the filing of said charge plaintiff demanded the return of his money from the defendants, and they refused to return the same or any part thereof, and have since paid it into the registry of this court, where it now is awaiting the outcome of this action; that this action was started before the filing of any charge against any of the persons so arrested. Mr. Dumett: I will stipulate to whatever Mr. Burgunder does. Mr. Burgunder: I think those are the facts."

It will be seen that we have to do here with cash bail deposited, not by the arrested person, but by another for him, with a chief of police or police officers, not with a justice of the peace or committing magistrate, under Rem. Comp. Stat., § 1957½, and not "with the clerk of the court to which he is held to answer," as provided in Rem. Comp. Stat., § 2089.

The plaintiff relies upon *Kellogg v. Witte,* 107 Wash. 691, 182 Pac. 570, as being decisive of the whole controversy. This case does seem to resemble, very closely, that case, and except that there are defenses raised here which were not raised there, it is difficult, if not impossible, to distinguish one from the other. There was, in the *Kellogg* case, however, no appearance here for the respondent, and as an *ex parte* presentation may have led us astray, it seems wise to re-examine the question to some extent.

It is admitted that we have no statute authorizing police officers to accept cash bail, and that police officers stand in the same position now as did justices of the peace and committing magistrates prior to the enactment of Rem. Comp. Stat., § 1957½, in 1919, and therefore the defendant officers had no authority in law to accept cash bail.

But while it is admitted that the officers had no right or authority to accept the money, and release the persons under lawful arrest, in whose behalf it was deposited, yet it is contended that the depositor may not recover it back, because he has induced the police to do an unlawful thing in permitting persons under lawful arrest to go at large, or escape, and has himself violated, or is *particeps criminis* in the violation of Rem. Comp. Stat., § 2344, which reads:

"Every person who shall allow a prisoner lawfully in his custody to escape, or shall connive at or assist such escape, or shall omit any act or duty by reason of which omission such escape is occasioned, contributed to or assisted, shall, if he connive at or assist such escape, be guilty of a felony; and in any other case, of a gross misdemeanor."

It was on this theory that the trial court decided the case.

There is considerable authority for that rule, when the bail money is deposited by the party under arrest.

The case of *Sauskelonis v. Herting*, 89 Conn. 298, 94 Atl. 368, fairly exemplifies this line of authority. It was there said:

"But it does not follow that the plaintiff can recover the cash bail he deposited upon his own request in order to obtain his release from a just confinement upon a lawful arrest. The plaintiff requested the sergeant to do an unlawful act, to fix his bail and release him from confinement, when the sergeant was without authority to do either. The sergeant complied with the unlawful request, and in violation of law released the plaintiff and thereby obstructed justice. Both plaintiff and sergeant have participated in an illegal act. The law presumes the plaintiff knew that he was soliciting and engaged in an unlawful act. The giving of the cash bail was the moving consideration for the unlawful release.

"We are now asked to relieve the plaintiff from the effects of his unlawful act, which has contributed to the breach of the law in obstructing justice through the procuring of his release from a lawful confinement. The plaintiff was in *pari delicto* with the officer of the city. The law will leave him where he placed himself, and our courts will not aid him to recover the cash bail which was the moving cause of his illegal release."

There are also many cases cited where the money was deposited by one not under arrest, for the purpose of securing the release of another who was under arrest. In some of these cases, there is no discussion of the doctrine of *particeps criminis*, that question apparently not having been raised, and they clearly hold that the officer, in the absence of an authorizing statute, was not empowered to accept money and release the person under arrest, and that the money so accepted was recoverable by the depositor.

*Brasfield v. Town of Milan*, 127 Tenn. 561, 155 S. W. 926; *McNamara v. Wallace*, 97 App. Div. 76. 89 N. Y.

Supp. 591; *Eagan v. Stevens,* 39 Hun 311. See, also, 3 R. C. L. 28.

The defense of *particeps criminis* or *pari delicto,* raised here, has, whenever raised elsewhere, been held to bar recovery by the depositor. In *State v. Reiss,* 12 La. Ann. 166, a short opinion was rendered which we quote in full:

"MERRICK, C. J.—Lazarre and Leopold Reiss were arrested under a charge of larceny.

"On a hearing, under a writ of *habeas corpus,* the district judge ordered that the parties be admitted to bail upon their executing their several bonds in the sum of five hundred dollars each with good and sufficient security, with a condition for their appearance at the next term of the district court.

"On behalf of Lazarre Reiss one Felix Reiss deposited cash and drafts in the hands of the sheriff, amounting to the sum of five hundred dollars, as security for the appearance of Lazarre Reiss, before the sixth district court in and for the parish of Iberville, to answer the charge.

"The sheriff signed the receipt for the money in his official capacity, and it seems enlarged Lazarre Reiss.

"An indictment was preferred against both defendants, and Lazarre failed to appear to answer the same.

"After this failure of Lazarre Reiss, Felix Reiss assigned his claim to the money in the hands of the sheriff.

"The present proceeding was commenced by a rule taken by the assignee of Felix Reiss upon the sheriff, to show cause why the money should not be paid to him. The state of Louisiana intervened in the rule, nevertheless it was made absolute, and the state has appealed.

"There is no law which authorizes a sheriff to receive money as a security for the appearance of persons accused of crime. Where parties are admitted to bail under bonds and recognizances, they are not absolutely discharged, but are (as it were) transferred from the custody of the sheriff to the friendly custody of the sureties in the bond or recognizance. 6 Mod.

R. 231. These new keepers have the right to surrender the party accused in discharge of his bond to the sheriff or his deputy, in open court or in the four walls of the prison. This right of surrender implies the right of arrest as an incident to it. Rev. Stat. p. 170, sec. 60; Ibid, p. 12, sec. 7.

"Aside from the positive provisions of law on the subject of bail in criminal cases, it is evident, to say nothing of its liability to abuse, that the deposit of money with the sheriff, as security for the appearance of the accused, would not be so likely to secure the end proposed as that provided by the statute.

"We think, therefore, the delivery of the money to the sheriff and his release of the accused upon the same, clearly illegal and against the policy of the law.

"The assignee of Felix Reiss has not acquired any greater right than Reiss himself had. Courts of justice will not aid parties to enforce or relieve them from the effects of contracts made in violation of law. See *Davis v. Holbrook*, 1 La. Ann. 178.

"The rule ought to have been discharged, but as the state alone has appealed the only decree we can render in accordance with our views of the law, is to dismiss the appeal."

In *Smart v. Cason*, 50 Ill. 195, it appears that one James J. Smart deposited, with the sheriff, a sum of money to secure the release of one David C. Smart, and afterwards brought the action to recover the amount deposited. The court, after holding that there was no authority in law for the sheriff to accept cash bail, and that his action in so doing was illegal, said:

"Then it follows that the act is unauthorized and illegal, and if so, the sheriff has wrongfully become possessed of this money, and plaintiff in error is entitled to recover it back unless he is *in pari delicto*. That it is a flagrant violation of the duty of a sheriff or jailor to discharge a prisoner committed to his custody under proper authority, unless it be by legal requirement, there can be no question. And should a sheriff receive a bribe for the purpose, he would no

doubt render himself liable to indictment and punishment under the criminal code; or where the sheriff willfully, or from ignorance of his duty, unlawfully discharges a prisoner indicted for crime. Section 101 of the Criminal Code declares that if any sheriff, coroner, jailer, keeper of a prison, constable, or other officer or person whomsoever, having any prisoner in his legal custody, before conviction, shall voluntarily permit or suffer such prisoner to escape or go at large, every such officer or person so offending, shall, on conviction, be fined in any sum not exceeding $1,000, and imprisoned in the county jail not exceeding six months.

"It is apparent, that the receipt of this money for the purposes shown by the evidence, was illegal, and that it did not warrant the discharge of the prisoner; and if that was not authorized, it was in violation of section 101 of the Criminal Code, and if so, then plaintiff in error was *particeps criminis*. There is no rule of law more firmly established, than that a party who gives or pays money to induce another to commit a crime or misdemeanor, being a party to it, cannot recover it back. Although this money was not paid as a bribe, it was left as an indemnity to the sheriff to procure the release of the prisoner, and plaintiff in error thereby contributed to the breach of the law, and from the evidence in the case, to a violation of the criminal code. It then follows, that as plaintiff in error contributed to the wrongful discharge of the prisoner, and has thus assisted in obstructing justice, he has no right to recover this money back from defendant in error."

*Cooper v. Rivers,* 95 Miss. 423, 48 South. 1024, is based upon the following facts: .One Cooper was arrested by the sheriff on a perjury charge. The father of the arrested person deposited, with the sheriff, $250 as cash bail, thus securing the prisoner's release. Afterwards, the father who deposited the money brought suit to recover the amount deposited. After holding that the action would not lie against the

sheriff, because he had paid the money into the registry of the court, the opinion proceeds:

"There is, however, another ground, to wit, that the plaintiff is in *pari delicto* with him in having joined in the violation of the law in taking the deposit of $250, instead of taking a proper bond or recognizance. In 50 Ill. 199, *Davis v. People*, we have a case on all fours with the case at bar. It was illegal in the state of Illinois to take the cash deposit instead of a bond or recognizance, and the court held that the act of the sheriff was illegal. But it went on to hold that the plaintiff was in *pari delicto* with the sheriff, and so could not recover the money."

*Whiteaker v. State*, 31 Okl. 65, 119 Pac. 1003, discloses that the cash bail was deposited by a brother of the person whose release was thus obtained. The court said:

"Assuming said repugnacy to exist, and the general doctrine to be as urged, in substance, that an officer authorized to receive bail for the appearance of a person charged with crime cannot receive money in lieu of bail, no such power being conferred by statute, and, if so paid in, neither the state nor county has claim to it . . . petitioner is far from a recovery. This for the reason that by so doing and securing the release of the prisoner the clerk in receiving the money and the sheriff in setting him at liberty were guilty at least, it seems, of 'committing an unlawful act tending to hinder justice,' denounced by Wilson's Stats. of Okla. § 2096, as a felony, and petitioner, if not an accessory under section 1948, was at least in *pari delicto*, and for that reason not entitled to invoke the power of this court in aid of his recovery."

It is extremely difficult for us to see any difference, in principle, between a cash deposit to secure the release of the depositor and a like deposit to secure the release of a son, brother or friend of the depositor, who may be under lawful arrest. If, in the one case, the depositor wrongfully secures his own release, in

the other he no less wrongfully secures the release of his friend. The gist of the offense in either case is the wrongful release of a person under lawful arrest, and it makes no difference who that person is. The words of our statute, "connive at or assist such escape," relate back to the word "prisoner," and the prisoner himself, or any other person, who so connives at or assists the prisoner to escape, is made guilty of a felony by the terms of the statute. Hence, we think that the Connecticut case, from which we have already quoted, and the case of *Moss v. Summit County*, 60 Utah 252, 208 Pac. 507, are equally in point here.

The facts as stated in the last cited case are:

"The plaintiff seeks to recover judgment against Summit county for the sum of $500, which, in his complaint, he alleges that said county 'converted to its own use.' It is not necessary to set forth the allegations of the complaint, except to state that the $500 aforesaid constituted a cash deposit which was made by the plaintiff upon condition that he might retain possession of his automobile which was taken into custody by the sheriff of said county at the time of plaintiff's arrest for knowingly and unlawfully having intoxicating liquors in his possession contrary to the provisions of our prohibition act, and which he was transporting in said automobile."

The Utah court then reviews most of the cases we have cited, and others, and proceeds:

"In some other cases the reasons are further enlarged, and additional grounds are stated, but the principal grounds urged are that the defendant, after having voluntarily entered into the illegal arrangement, and having received the full benefit of the illegal transaction, must be deemed to have waived all illegality and invalidity of the transaction. The reason is also given that the person who deposited the cash, by voluntarily entering into the illegal arrangement, is in *pari delicto* with the officer or court fixing and

receiving the money in lieu of the bail bond, and hence the courts will leave the whole matter just as they found it, and decline to give relief.''

It seems apparent therefore that *Kellogg v. Witte, supra,* is right as far as it goes in its discussion of the law, but is wrong in that it does not discuss a defense which was not there raised. Whether the court should have raised the question of *particeps criminis* or *pari delicto,* of its own motion, it is now useless to inquire.

We conclude that the trial court was right in denying the plaintiff any recovery.

As to the cross appeal by the state, as intervener, but little is presented here, and we gather, both from the brief and from the oral argument, that the state is not now insisting upon any right which would require a reversal on its appeal. Under these circumstances there is nothing to do but to affirm the judgment.

The trial court, by the terms of its judgment, withheld for future consideration the question of what should be the final disposition of the money deposited and paid into the registry of the court by the defendant, and since the trial court has not passed upon the question of the final disposition, we are not now at liberty to consider that subject.

The judgment is affirmed.

MITCHELL, C. J., FULLERTON, and HOLCOMB, JJ., concur.

BEALS, J. (dissenting)—From the stipulated facts upon which the superior court determined the issues between the parties to this action, quoted in the majority opinion, it appears that the defendant Severyns, as chief of police of the city of Seattle, at the request of the prosecuting attorney, fixed bail for the ap-

pearance of the six men who had been arrested, and that thereafter appellant deposited, with the chief of police, cash in a sum equal to the amount of bail so fixed. These circumstances are peculiar, but controlling, and in my opinion distinguish this case from the cases relied upon in the majority opinion.

In my opinion, appellant cannot be held to be in *pari delicto* or *particeps criminis*, and I accordingly dissent from the conclusions reached by the majority.